OHIO COAL CO. v. WHITCOMB et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1903.)

No. 925.

1. CARRIERS—DISCRIMINATIVE CHARGES—JOINT USE OF TERMINAL TRACK.

Along the docks in a city was a railroad track called the "Bay Front
Track," one part owned by defendant, and connecting with its main
line, and the other part by another railroad company, and connected with
its line, and connecting spurs from which reached the several docks.
By an agreement between the two companies the entire track was used
jointly, each maintaining its own portion. Held, that such agreement
made the entire track a part of defendant's terminals, and that an extra
charge of $2 per car, made to one shipper from a point on the docks, in
addition to the published schedule of rates from the city, where no extra
charge was made to any other shipper, was discriminative.

**2. SAME—AGREEMENT TO PAY DISCRIMINATIVE CHARGES—ESTOPPEL.**

An agreement by a shipper to pay a discriminative charge exacted by a railroad company in order to obtain service to which it was legally entitled without such charge, and with an express stipulation that it thereby waived none of its legal rights, does not estop it from maintaining a suit to recover back the sum so paid.

**3. SAME—CHARGE FOR OPERATING PRIVATE SIDE TRACK—WISCONSIN STATUTE.**

Rev. St. Wis. 1898, § 1802, which gives a railroad company, thereby required to maintain and operate private side tracks connecting with its lines, and extending to elevators, warehouses, etc., the right to charge the actual cost of maintaining and operating such track, to be paid monthly by the owner, does not justify a company in making an arbitrary charge per car in addition to the scheduled rates for all cars loaded on and taken from such side track, without any reference to the actual cost of maintenance and operation of the track.

**4. RAILROADS—ACTION AGAINST RECEIVERS.**

Where, on sale of a railroad in foreclosure, the purchaser is required by the decree to pay all liabilities of the receivers remaining unpaid, the court retains jurisdiction to determine such liabilities and enforce payment, and an action may be maintained against the receivers to establish such a liability, although the receivership has been terminated, and the property turned over to the purchaser.

Jenkins, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

The Ohio Coal Company, plaintiff in error, a corporation existing under the laws of the State of Minnesota, was at the time of the transactions in suit, a wholesale dealer in coal, having certain docks at Ashland, Wisconsin. The defendants, receivers of the Wisconsin Central Railroad Company, and the Wisconsin Central Company, corporations existing under the laws of the state of Wisconsin, were operating certain lines of railroad from Ashland throughout the state of Wisconsin, and into adjoining states. The action was brought by plaintiff in error to recover damages for unjust discrimination and undue preference, principally on account of a certain charge of two dollars per car exacted from the coal company, in addition to the published tariff rate from Ashland to points of destination; such extra charge not being asked, or received from other shippers from Ashland.

The facts are substantially as follows: Along the shore of Lake Superior in the city of Ashland, connected by switches with nearly all the docks in the city, is a track known as the "Bay Front track". Its westerly end is connected with, and forms a part of, the Chicago, St. Paul, Minneapolis & Omaha Railroad Company's railroad. Its easterly end is connected with, and forms a part of, the Wisconsin Central Railroad Company's railroad. It is used jointly by both roads under an agreement, whereby each company is granted the right to run over the track of the other their freight cars, empty or loaded, moved by their own engines, handled by their own train crew, under such rules and regulations as are from time to time agreed upon; each company to pay the other, for every loaded or partly loaded car thus moved, the sum of fifty cents. Each company agreed at its sole cost, to keep the tracks thus owned by it, the joint use whereof is stipulated, in safe and proper condition; to construct and maintain all necessary spur and side tracks to the mills and industries reached by this track; to assume all risk for persons or property damaged by its own trains upon the track of the other; and to share the rights of joint use thus acquired with no other transportation company entering the city of Ashland. The point on the Bay Front track that separated these two portions of the track—one owned in fee by the Omaha Company, and the other by the Wisconsin Central Company—was in what was known as block 70, Vaughn's Division of the city of Ashland.

---

¶ 4. Suits by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.

The agreement thus made on the 12th of September, 1885, continued down to, and included the transactions upon which the action was brought, each railway during that time operating over the Bay Front track under the agreement, except for a short period when the agreement was suspended.

The only coal shippers tributary to this Bay Front track—indeed the only wholesale coal dealers in the city—were the Ohio Company, occupying a dock about three-fourths of a mile west of the division point named, and another company, the tenant of the Wisconsin Central Railroad, occupying a dock east of such point. Tributary to this track, however, both ways from the point named, were various shipping industries, such as ore, stone, salt, cement, building material, lumber, logs, and the like. All of these docks, including the docks of the two coal companies, were connected with the Bay Front track by switches or spurs. All these industries, except the Ohio Coal Company, irrespective of their situation east or west of the division point named, were served by the roads without difference or discrimination in either charges or facilities.

The shipments of coal from both coal companies was largely to the Gogebic regions, and was carried on principally in ore cars, containing ten tons—all of the thirty-seven hundred and eighty-two cars constituting the subject matter of this suit, except one hundred and fifty, being such ore cars. Though no charge additional to the published tariff (fifty-five cents a ton to all points on the Iron Range), was made to the other coal company, a charge of two dollars a car was imposed upon and collected from the Ohio Coal Company. On protest of the Ohio Company, all service to it was for a time suspended; but subsequently negotiations were entered into, resulting in a restoration of the service at the extra charge of two dollars per car, including the setting in of the cars upon the Ohio Company's dock—a distance of about eighteen hundred feet from the Bay Front track—and the bringing of them out to the freight yard, to be made up in the trains. This arrangement was brought about by the two telegrams following, the first sent by the receiver to the Coal Company, the second being the coal company's reply.

"Milwaukee, September 5th, 1896.

"Ohio Coal Co., St. Paul, Minnesota. Referring to conversation with Mr. Boyesen yesterday, our people will, if you desire, switch cars for you at your present dock, at two dollars per car. No charge for empties. Subject to demurrage charge in case of delay and subject further to be determined at our pleasure, all without prejudice to existing relations of parties.

(Signed)          Howard Morris."

"St. Paul, 9–5, 1896.

Howard Morris, Milwaukee, Wis.

Proposition in your telegram satisfactory with the further understanding that in making such payments for switching service we waive none of our legal rights. When can we expect service?

(Signed)          Ohio Coal Co.
J. E. McWilliams,
Vice-President."

Previous to this, the Ohio Coal Company had intervened in the receivership suit in the Eastern District of Wisconsin to obtain an order to restore service by the receivers, but after the arrangement above set forth, its petition was not further prosecuted.

Before the trial in the Circuit Court, the action was dismissed against the defendants as receivers of the Wisconsin Central Company, leaving them in as receivers of the Wisconsin Central Railroad Company, and at the conclusion of the evidence, a verdict was entered by direction of the court, in favor of the defendants. From the judgment entered on this verdict, the writ of error is prosecuted.

The further facts are stated in the opinion of the court.

P. J. McLaughlin and A. E. Boyesen, for plaintiff in error.
Wm. F. Vilas, for defendants in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the Court.

The agreement of September 12, 1885, under which the Wisconsin Central Railroad Company, and its receivers, operated their road in the city of Ashland, made in our opinion the Bay Front track an integral part of the Wisconsin Central's terminals. True, the Wisconsin Central had no title in fee to the roadbed west of the division point named. But the grant under the agreement was, for the purposes of a terminal, as complete as if it were in fee simple, or leasehold. The limitation on the grant was important as between the railroads individually, but, as between the railroads collectively and the public, the agreement simply gave to the roads more extended terminal facilities. The published tariffs from Ashland to outside points must be held—at least in the absence of a tariff differential applicable alike to all—to have included transportation over this, as over other parts, of the road's lines.

Starting from this premise, then, the inquiry arises: Was the extra charge of two dollars a car, upon the shipments made by the Ohio Company, and upon no other, discriminative? Its justification as non-discriminative is placed principally upon three grounds: (a) that all things considered, two dollars was but a fair differential; (b) that it was a charge agreed upon by the Ohio Company and cannot therefore be the subject of complaint now; and (c) that it may be regarded as an agreed charge under the Wisconsin statute permitting the railroad company to charge the actual expenses of operating and maintaining a switch or spur track to a tributary industry.

None of these reasons is convincing. When it is borne in mind that the Bay Front track was a part of the Wisconsin Central's terminals, and that no charges other than the schedule tariff rates were imposed upon shipments from industries along that terminal, other than the Ohio Company's shipments, it becomes manifest that, barring any charge permissible under the Wisconsin statute referred to, the extra charge to the Ohio Company is discriminative. The aspect of the question raised by the Wisconsin statute will be referred to hereafter.

Nor can the right to make such charge be maintained as a special rate agreed upon between the parties. The correspondence out of which it rose, clearly reserved to the Ohio Company the right to challenge its legality. There was no agreement that the charge was legal, and no agreement that its supposed illegality should not be tested. The gist of the agreement—as evidenced in the telegrams—is that if the receivers would restore the service, the Ohio Company would pay, as the cars were served, the extra charge; but subject to its right to recover this portion back in any proper legal proceeding; and the action under review is such proceeding.

But had there been an agreed special charge, without reservation of right to question its legality, it is doubtful if such agreement would stand as a bar to an action, where, as in the case under review, it clearly appeared that the agreement was entered into by the Ohio Company solely to escape being left without service at all. Common carriers, bound by the law to serve all without discrimination, may not hold shippers to agreements exacted under the alternative of destruc-

tion of their business. The carriers having no right, other than that of physical might, to extort such an agreement, the agreement itself partakes of the character of an agreement made under duress.

Nor can the extra charge be justified, in our judgment, under the Wisconsin statute. The statute in question is as follows:

"The owner of any elevator, warehouse, mill, lumber, coal or wood yard within the yard limits of any station or terminus of any railroad may, at his own expense, construct a railroad track from such elevator, warehouse, mill or yard to such railroad and connect with the same by a switch at a point within the yard limits of such station or terminus, and the railroad corporation shall allow such connection. Such side track and switch shall at all times be under the control and management of and be kept in repair and operated for the benefit of such owner or his assigns by such corporation; but the actual cost of so maintaining and operating the same shall be paid monthly by the owner thereof; and in case of his neglect to so pay the same upon demand the obligation of this section upon any such corporation shall cease until such payment be made in full." Section 1802, Rev. St. 1898.

The statute, it is seen, requires monthly statements; no such statements were made to the Ohio Company. The statute limits the charge to actual expenses; no pretense is made that the operation of the spur line, from the Bay Front track to the Ohio Company's dock, cost two dollars per car. Nor was there an agreement that the charge should be accepted in lieu of the actual expenses contemplated. It was never so claimed by the receivers, or so understood by the shipper. The whole contention is a manifest after thought, brought forward now to cover what, at the time, was unthought of between the parties.

The fact that the action was not brought until after the receivership had been terminated, and the property turned over to the owners pursuant to the final decree, does not in our view of the law, bar this action. The decree in the receivership suit provided that the purchaser, at the receivership sale, should satisfy and discharge any unpaid indebtedness and liability of the receivers which had been incurred in the management and operation of the mortgaged premises, on or after September 27th, 1893; and jurisdiction to carry out that part of the decree was reserved in the court. To that extent the receivership case is still pending. The purpose of the action under review is to ascertain and liquidate the claim of the Ohio Company, if it have any, against the receivers; upon such liquidation application can be made in the original receivership suit for such proceeding as shall carry the claim to execution. There need be no conflict of tribunals.

The view of the case, thus taken, makes it unnecessary to review any of the assignments of error except that taken to the direction of the court that brought about the verdict. That direction, on the facts before us, was erroneous; and for such error the judgment below is reversed, with instructions to grant a new trial.

JENKINS, Circuit Judge (dissenting). A common carrier is not under obligation to carry, except on its own line (Atchison, Topeka & Santa Fé Railroad Company v. Denver & New Orleans Railroad Company, 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291); but, contracting to go beyond, the carrier may not unjustly discriminate between shippers upon the line beyond. But what is unjust discrimina-

tion? At common law the obligation of the carrier is to exact only a reasonable compensation for the service, and as to the receipt and transportation of goods the carrier must, where the conditions and circumstances are identical, treat all shippers alike. It was doubted, however, if the carrier was bound to make a like charge to all for the like service. Statutory provisions, both in England and in this country, have pronounced against the giving of undue or unreasonable preference, and the situation under the English statutes and the interstate commerce act in this country is thus summed up by the Supreme Court:

"In short, the substance of all these decisions is that railway companies are only bound to give the same terms to all persons alike, under the same conditions and circumstances, and that any fact which produces an inequality of condition and a change of circumstances justifies an inequality of charge." Interstate Commerce Commission v. Baltimore & Ohio Railroad Company, 145 U. S. 263, 283, 284, 12 Sup. Ct. 849, 36 L. Ed. 699.

The court also cited approvingly from the opinion of Judge Jackson in the court below ([C. C.] 43 Fed. 49), as follows:

"To come within the inhibition of said section [the interstate commerce act] the differences must be made under like conditions; that is, there must be contemporaneous service in the transportation of like kinds of traffic, under substantially the same circumstances and conditions;" and remarked, "It is not all discriminations or preferences that fall within the inhibition of the statute—only such as are unjust or unreasonable."

See, also, Texas & Pacific Railway Company v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940. In Western Union Telegraph Company v. Call Publishing Company, 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765, the court ruled that where there is a dissimilarity in the service a difference in charge is proper, and no recovery can be had, unless it is shown not merely that there is a difference in the charges, but that the difference is so great as, under dissimilar conditions of service, to show an unjust discrimination, and the recovery must be limited to the amount of the unreasonable discrimination, the court remarking (page 100, 181 U. S., page 564, 21 Sup. Ct., 45 L. Ed. 765):

"All individuals have equal rights, both in respect to service and charges. Of course, such equality of right does not prevent differences in the modes and kinds of service and different charges based thereon. There is no cast-iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same line. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and even when based upon difference of service must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination."

There can be no undue preference when the conditions constitute an inequality rendering the discrimination just, nor can there be the like service under the statute when the circumstances and conditions are not alike.

The action here was originally brought to recover triple damages under the Wisconsin statute (Sanb. & B. Ann. St. Wis. § 1798), which prohibits preference "for a like service," and forbids an unreasonable price, and permits the person aggrieved to recover for unjust discrimination three times the actual damage sustained. The

unjust discrimination alleged is (1) the charge of $2 per car when, without charge, the defendants rendered like service to its competitor, the tenant of the commercial dock; (2) without charge they rendered like service to certain lumber companies and other industries situated upon the same or adjacent docks upon the Omaha branch. The complaint was amended so that there might be recovery, either under or independently of the statute, of the amount of alleged excessive charges. The two branches of the complaint should be considered separately to ascertain the precise circumstances which govern each —to ascertain with respect to the first whether, in the language of the statute, there was a "like service," and with respect to the second whether the charge made was unreasonable.

Was the service to the tenant of the commercial dock a like service to that rendered the plaintiff? That was on the line of and directly connected with the Wisconsin Central Railroad by a spur track owned and controlled by that company. The plaintiff was located 2,000 feet or more to the west, its plant being connected with the Omaha track by a spur track owned by the proprietor of the dock, running north some 2,300 or 2,400 feet. The service required transportation beyond the line of the road, over the line of the Omaha road, and over the private spur track, necessitating the movement of an engine nearly six miles to place empty cars in position to receive a load and to haul the cars to the track of the defendant, the additional transportation of the cars, and, in addition, the payment to the Omaha Company of 50 cents a car for each loaded car. That surely ought not to be held to be a like service to that rendered to the tenant of a dock located upon the line of the Wisconsin Central. The conditions were different. Indeed, to require the rendering of the service for the same compensation would be, in my judgment, to compel the Wisconsin Central to discriminate against its own tenant and against its own property. The service to the plaintiff was rendered at an actual additional outlay paid to the Omaha Company of $1,886.00 in addition to the cost of a longer haul. I think the receivers were entitled to exact a reasonable compensation for the additional traffic (Walker v. Keenan, 73 Fed. 755, 19 C. C. A. 668; Interstate Commerce Commission v. Chicago, Burlington and Quincy Railroad Company, 186 U. S. 320, 22 Sup. Ct. 824, 46 L. Ed. 1182); and that under the circumstances there can be no claim for unjust discrimination. There is no evidence in this record, as I read it, tending to show as matter of fact that the charge of $2.00 per car was unreasonable. The price was the regular switching charge at Ashland, which one railway company exacted of another, and which the plaintiff was required to pay and did pay when it shipped over the Chicago & Northwestern Railway. The charge included the 50 cents per car which the Wisconsin Central Railroad paid to the Omaha road. The burden was upon the plaintiff to show that the additional sum was an unreasonable switching charge. Failing any such proof in this record, it is difficult to understand that the trial court could have ruled otherwise than it did upon this branch of the case.

With respect to the other branch, it cannot be said that there is just ground for the charge of discrimination. It is true that granting

use of like tracks to some shippers and denying the use of them to others, the circumstances and conditions being substantially similar, constitutes unjust discrimination. But the other tenants of the docks, which were in part occupied by the plaintiff, were not in the same business, but dealt in lumber, lime, salt, cement, and like products. These products were a different class of goods from coal, paid higher rates of transportation, and with respect to them there was keener competition. The tariff freight on lumber was 16 cents per hundred pounds, on salt 6⅓ cents per hundred pounds, on cement 6⅔ cents, on lime 18 cents, on sewer-pipe 5 cents, while the freight on coal was 50 cents per gross ton. There was upon these docks no other dealer in coal. That the receivers made no switching charge to these other industries cannot avail the plaintiff; for, in view of the character of the freight and the competition with other roads, it could properly waive the charge without the imputation of discrimination against the plaintiff. There was therefore no discrimination under the statute, so that the only question remaining is whether the charge was reasonable or unreasonable. In so far as it was unreasonable, the plaintiff could, probably, under the statute which it invoked, recover to the extent that it was unreasonable, and, the proof therein failing, I think the trial court was correct in directing a verdict.