St. Louis Southwestern Railway Company *v.* Owings, Administratrix.

## Opinion delivered June 24, 1918.

1. RECEIVERS—DISCHARGE—RAILROAD RECEIVERSHIP—SUIT COMMENCED AGAINST THE RECEIVER.—The receiver of the Chicago, R. I. & P. Ry. Co. was discharged while an action was pending against him for personal injuries. In discharging the receiver the court expressly provided that the railroad should hold the receiver harmless for the defense of actions begun against him. *Held*, the action could be maintained against the receiver, the obligation being upon the railway to discharge the liability.

2. CARRIERS—PERSONAL INJURY ACTION—MAY BE SUED IN WHAT COUNTY.—Under Kirby's Digest, section 6068, a railroad may be sued in the county where plaintiff was injured, where it runs its trains through that county, but maintains no agent there.

3. DAMAGES—PUNITIVE DAMAGES.—Negligence alone, however gross, is not sufficient to justify the award of punitive damages. Punitive damages can be awarded only where there is evidence of an intentional or wilful wrong, or conduct from which malice might justly be inferred.

4. RAILROADS—COLLISION—GROSS NEGLIGENCE.—A rear-end collision between two trains *held* to have been caused by gross negligence, but not negligence sufficient to warrant the award of punitive damages.

5. NEGLIGENCE—WRONGFUL DEATH—COMPENSATORY DAMAGES.—Deceased was killed by the negligence of defendant railway company; his death was instantaneous; he left surviving him only his widow; he had been earning about $125 per month when killed and was twenty-nine years old. *Held* compensatory damages in the sum of $15,000 were all that could be recovered.

Appeal from St. Francis Circuit Court; *J. M. Jackson*, Judge; affirmed on remittitur.

*Thos. S. Buzbee, H. T. Harrison* and *C. L. Johnson*, for Dickinson, Receiver, and Chicago, Rock Island & Pacific Railway Company, appellants.

1. The motion of the receiver to dismiss the action as to him should have been sustained. The receiver had

been discharged and his duties terminated and he was no longer liable. 97 Ark. 373; 34 Cyc. 480; 156 Fed. 735; 53 N. E. 816; 7 *Id.* 537; 19 *Id.* 477.

2. The verdict for compensatory damages is excessive. Deceased was killed instantly and there were no children—only the widow. 57 Ark. 384; 117 *Id.* 198-209; 89 *Id.* 326-334; 87 *Id.* 443-445; 77 *Id.* 405. In no view should more than $10,000 have been allowed under the well established rules for compensatory damages.

3. The verdict for punitive damages is not supported by the evidence. There was no wilfulness, wantonness or indifference to consequences from which malice could be inferred. Mere gross negligence is not sufficient. 104 Ark. 93; 77 *Id.* 109; 87 *Id.* 127; 84 *Id.* 241.

*Daniel Upthegrove, J. R. Turney* and *Hawthorne & Hawthorne,* for St. Louis Southwestern Railway Company.

1. The service should have been quashed. There was no proper service of summons. Kirby's Digest, § 6072-4, 6045; act April 16, 1901.

2. The verdict is excessive as to compensatory damages. 77 Ark. 405; 60 *Id.* 550; 114 *Id.* 224; 89 *Id.* 326; 87 *Id.* 443; 90 *Id.* 398.

3. The verdict for punitive damages is not sustained by any evidence. 88 Ark. 200; 53 *Id.* 7; 77 *Id.* 109; 104 *Id.* 89; 87 *Id.* 127; 78 *Id.* 331. No malice or wilful, wanton or conscious indifference to consequences was shown.

*Rhea P. Cary* and *G. T. Fitzhugh,* for appellee.

1. The motion to dismiss as to the receiver was properly overruled. The cases in 97 Ark. 373 and others cited by appellant are not in point. Here the receiver was not discharged finally and unconditionally, but upon conditions stated in the order of discharge. Hopkins, Jud. Code, § 66; 49 Fed. 807; 163 U. S. 456; 10 Enc. U. S. Sup. Ct. Rep. 555, 562-5; 141 U. S. 327-9; 179 *Id.* 335; 177 *Id.* 584. There was an express reservation as to pending suits. 34 Cyc. 480; 123 Fed. 359; 80 Pac. 727, 730.

2. The verdict for compensatory damages is not excessive. 60 Ark. 550-9; 188 S. W. 589; 87 Ark. 443; 76 *Id.* 377; 105 *Id.* 533; 100 *Id.* 107; 99 *Id.* 265; 171 S. W. 115; 93 Ark. 564. See many cases cited in L. R. A. 1916 C. 820, *et seq.,* and annotations. Also Watson on Damages for Personal Injuries, § 362; 155 Ky. 254; 50 L. R. A. (N. S.) 853-7.

3. The verdict for punitive damages is fully warranted by the evidence. The court's charge correctly stated the law. Reynolds, Trial Ev. 102-4; 174 Ill. 398; Jones on Ev. 134; 1 Chamberlayne, Mod. Law of Ev. § 826; 85 N. Y. 61; 84 Ark. 241, and others.

4. Service was valid on the St. L. S. W. Ry. Co. Kirby's Digest, § § 6035, 6072; 45 Ark. 94; Kirby's Digest, § 6045, 7483, etc.

SMITH, J. Appellee is the widow and administratrix of the estate of Ben L. Owings, who was killed in a rear-end collision between a train of the Chicago, Rock Island and Pacific Railway Company, known as the Rock Island Railroad, on which he was a passenger, and a train of the St. Louis Southwestern Railway Company, known as the Cotton Belt Railroad. The collision occurred while the Rock Island train was stopping at Mounds, Arkansas, a station on the Rock Island railroad, and the Cotton Belt train, which collided with it, was a train operated by that railroad over the roadbed of the Rock Island railroad between Brinkley, Arkansas, and Memphis, Tennessee. Owings became a passenger at Forrest City on the evening of January 27, 1917, to Memphis for the purpose of spending with his wife the first anniversary of his marriage.

An unusually heavy fog rendered it impossible for the operatives of the train to see more than a few hundred yards even with the aid of the headlights, and the suit for damages was brought on the theory that the roads were jointly negligent and liable. It was contended that the Cotton Belt was negligent in running its train at an excessive speed under the physical condi-

tions which existed at the time, and in the failure to observe a rule that one train shall not follow another closer than ten minutes; and that the Rock Island railroad was negligent in failing to take the proper precautions to notify the oncoming train that the train upon which deceased was a passenger was standing still at the station of Mounds.

At the time of the collision, and of the institution of the suit, the Rock Island Railroad was being operated by J. M. Dickinson as receiver under the orders of a Federal court, but the receivership had been discharged at the time of the trial. Upon discharging the receiver and restoring the property to its owners the court in which the receivership had been pending made the following order:

"Section 6. The prosecution and defense on behalf of the receiver, without cost or expense to him of any and all actions, suits or litigations to which he is or may be a party will be taken over and assumed by the railroad company, with the right, however, to control, continue or alter the policy of any such prosecution or defense, and with the further reservation that the payment of any final judgment in any action now pending or which hereafter may be rendered against the receiver in any such action now pending, shall be subject to such order as the court shall make relative thereto, either by way of reference to the special master heretofore appointed or otherwise.

"7. The Railway Company will indemnify and hold harmless, and will agree to indemnify and hold harmless, the receiver, his heirs, executors and administrators, from and against any and all claims, demands, suits, actions, litigations, liabilities, damages, costs, expense, or other matters whatsoever arising or accruing from all or any of his acts as receiver.

"13. That the defendant Railway Company shall take over and assume the defense of all actions and suits at law or in equity against the defendant Railway Company, and the receiver or receivers herein, or against

either or any of them, or in which they, or any of them, are or is a party defendant, pending and undetermined at the date of the entry of this decree, in any court or tribunal; that the property and assets of the defendant railway company are to be liable for the amounts of any judgments eventually obtained in any of such actions and suits, but the payment of any judgment pending or which hereafter may be rendered against the Railway Company on any cause of action on or prior to June 25, 1917, shall be subject, however, to such order as said Illinois court shall make in the premises, either by way of reference to said special master or otherwise, and subject to the rights of defendant Railway Company as specified in this decree.''

A motion was made to dismiss the suit upon the ground that—the receiver having been discharged—the suit could not thereafter be maintained against him.

A motion was filed on behalf of the Cotton Belt to dismiss the cause for lack of proper service against that railroad. The suit was brought in St. Francis County and service of process was had upon an agent of the railroad in Monroe County. Although the railroad operated a train through St. Francis County over the Rock Island Railroad Company's tracks, it maintained no agent in that county. This motion was overruled and proper exceptions saved.

Objection was made at the trial to the submission to the jury of the question of liability for punitive damages. And it is also insisted that the sum recovered as compensatory damages is excessive. The judgment was for $22,500 compensatory damages and $5,000 punitive damages. These questions will be discussed in the order stated, and other facts will be set forth in that connection.

(1) The Rock Island Railroad Company relies upon the decision of this court in the case of *O'Leary* v. *Brent*, 97 Ark. 373, to support its contention that the judgment was improperly rendered against the receiver. But there exists a very important distinction in the facts be-

tween the two cases. There the receiver had been discharged finally and unconditionally. Here the discharge was upon the conditions stated in the order set forth above. There the receiver had fully discharged his functions. Here it was within the knowledge of the court and its contemplation, when the order discharging the receiver was made, that during the receivership of this vast system many causes of action had arisen which were then undetermined.

The case of *Denver & R. G. R. Co.* v. *Gunning,* 80 Pac. 727, announces the principle which we think is controlling here. It was there insisted that an action against a receiver could not be maintained because the control of the property had passed from his hands and that his official liability ended with the termination of his official existence. But in that case, as in this one, the discharge of the receiver was conditional, and the court there said: "The property had passed from his hands to a purchaser, but upon the express condition that the legal liabilities incurred by him should be discharged by such purchasers. Evidently it was known to the court that actions were pending or obligations existed upon which suit might be brought, and that is why the decree respecting his discharge provided that it should not prevent him from defending actions then pending, or which might thereafter be brought. The court retained jurisdiction for the purpose of enforcing its orders against the purchasers for the payment of the indebtedness of the receiver, with authority in the receiver to defend actions brought against him in his official capacity; so that for the purposes of this action he was still to be regarded as the receiver of the Colorado Midland Railroad Company, and he still had the power under the decrees to which we have referred to satisfy the claim of plaintiff when reduced to judgment out of the property of the railroad company."

Another case cited in the brief which supports this view is that of *Ohio Coal Co.* v. *Whitcomb,* 123 Fed. 359, 59 C. C. A. 487.

(2) Section 6068, Kirby's Digest, conferred the right to sue the Cotton Belt Railway Company in St. Francis County, as it was operating trains through that county. Indeed, the very train which inflicted the injury sued for was operated through that county. *C., R. I. & P. Ry. Co.* v. *Jaber*, 85 Ark. 232.

(3) We think error was committed in submitting the question of liability for punitive damages, and the judgment therefor must be set aside. The testimony warranted a finding of the grossest negligence; but this court is thoroughly committed to the doctrine that negligence alone, however gross, is not sufficient to justify the award of punitive damages. In the case of *St. L., I. M. & S. R. Co.* v. *Dysart*, 89 Ark. 261, the evidence tended to show that an Iron Mountain train ran into a train of the Frisco railroad at a grade crossing. That it did so at a speed of twenty-five miles per hour and that no signals for the crossing were given and that no effort was made to slacken the speed. This was in violation of an unequivocal rule of the company on the subject. In reviewing the judgment of the trial court in awarding punitive damages it was said: ''The terms 'wilfulness, or conscious indifference to consequences from which malice may be inferred,' as used in the decisions of this court, means such conduct in the face of discovered peril. In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice will be inferred.''

(4) There was in that case, as in this, evidence of gross negligence, but in neither case was there any evidence of any intentional or wilful wrong or conduct from which malice might justly be inferred. It was within the power and it was, therefore, the duty of the railroad companies to advise the operatives of each of these trains of the presence of the other, and the lack of this knowledge which they should have had is negligence which

renders each of the companies liable for the damage flowing therefrom. It was likewise negligence for the operatives of each of these trains not to have taken the precaution which the atmospheric conditions and the rules of both companies required. But such failure is at last only negligence, however gross it may appear to be under the circumstances stated. See also *St. L. Sw. Ry. Co.* v. *Evans,* 104 Ark. 93; *St. L. Sw. R. Co.* v. *Myzell,* 87 Ark. 127; *St. L., I. M. & S. R. Co.* v. *Stamps,* 84 Ark. 241; *Ark. & La. Ry. Co.* v. *Stroude,* 77 Ark. 109.

(5) We are also of the opinion that the judgment for compensatory damages is excessive. The deceased was killed instantly, and was not survived by any children. The recovery of compensatory damages was based entirely upon the loss of contributions to his widow. The proof shows that deceased had worked for about two years at a salary of $125 per month, out of which sum he paid his own expenses in addition to the contributions made to his wife for her support. Following this employment he was engaged at an employment for seventeen months in which his compensation depended upon the commissions earned by him, and while so engaged his earnings averaged about $100 a month. Two weeks before his death he entered the service of the Vacarro-Grobmeyer Lumber Co. at Forrest City under a contract whereby he was paid, at the beginning, the sum of $100 per month, with the understanding that if his services proved satisfactory his salary would be increased after sixty days to the sum of $125 per month. Grobmeyer, his last employer, testified that his services were entirely satisfactory and that the promised increase in salary would have been granted at the time stated. He also testified that the deceased was attentive to business, competent, capable, sober and industrious, and this testimony in regard to the character and capacity of the deceased was such as to fairly warrant the finding by a jury that the deceased would have earned other promotions and increases of salary. The testimony shows that deceased was twenty-nine years of age at the time of his

death and that his expectancy, according to the experience tables, was thirty-four to thirty-five years. His contributions to his wife at that time were about $75 per month, and it was shown that an annuity for that sum for a man of his age could have been purchased for $9,600. The contributions to the widow here are the same as they were to the widow in the case of *St. L., I. M. & S. R. Co.* v. *Freeman,* 89 Ark. 326. In that case, as in this, death was instantaneous and the recovery was based alone upon loss of contributions to the widow. In that case we reduced the judgment for twenty thousand dollars to fifteen thousand dollars and in doing so said: "Making due allowances for the probable increase in his earning capacity, we are of the opinion that the evidence is insufficient to sustain a verdict for more than $15,000. While much latitude is allowed the jury in passing upon what the earning capacity will probably be, the power of the jury in this respect is not unlimited. They should not be allowed to indulge in extravagant speculation, not warranted by the evidence, as to what the increased earning capacity might be. The burden of proof is on the plaintiff to produce evidence which tends to throw light upon the question, in some substantial way, as to what the future earnings will probably be and the present value thereof to those who were dependent on the decedent. *Railway Company* v. *Robbins,* 57 Ark. 384."

It is true the decedent in that case was only twenty-four years of age, whereas the decedent in the instant case was twenty-nine years of age. Still we are of the opinion that the judgment should not be reduced here to a smaller amount than that allowed there, for as was said in the case, with which we are comparing the instant case, much latitude is allowed the jury in passing upon what one's earning capacity will probably be. Regard must be had to the testimony of each particular case; and while we think the testimony fairly warranted the jury in finding that there would have been such increase in earning capacity and contributions as would support a verdict for $15,000, yet a judgment beyond that sum is more or

less speculative and is without sufficient testimony to support it.

The judgment for punitive damages will be reversed and the suit therefor dismissed. If appellee will, within fifteen days, enter a remittitur down to $15,000, the judgment for that amount will be affirmed; otherwise it will be reversed and remanded for a new trial.