ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY CO. v.
DYSART.

Opinion delivered February 8, 1909.

1.  EVIDENCE—EXPERT TESTIMONY.—It was not error to permit one familiar with the operations of trains to testify that he was standing in front of a train and saw no indication of an effort to slacken the speed of the train as it approached him. (Page 264.)

2.  RAILROADS—NEGLIGENCE—EVIDENCE.—In an action against a railroad company for personal injuries negligently caused by failing to stop a train at the intersection of another railroad, it was competent to prove that after the accident a witness saw a trainman turn an angle cock on one of the cars of the train, as tending to show that defendant was negligent in not having the air applied further back from the engine than this car. (Page 265.)

3.  APPEAL AND ERROR—HARMLESS ERROR.—The introduction of harmless evidence is not prejudicial. (Page 266.)

4.  RAILROADS—CONTRIBUTORY NEGLIGENCE.—Where plaintiff, a locomotive fireman, was injured, while in discharge of his duties, in a collision with an engine of another railroad company, it was not error to refuse

to instruct the jury that "it was the duty of the fireman to use every precaution that a reasonably prudent man could use to avoid the injury, and if you find from the evidence that the plaintiff in this case was, for a short time prior to and up to the time of the injury complained of, shoveling coal into the firebox of his engine as said engine was approaching the crossing [of the two railways] you are instructed that such action on the part of the plaintiff was negligence;" the question whether plaintiff was negligent in not keeping a lookout being for the jury. (Page 266.)

5.  EXEMPLARY DAMAGES—WHEN RECOVERABLE.—Negligence alone, how-however gross, is not sufficient to justify the award of punitive damages; there must be an added element of intentional wrong or conscious indifference in the face of discovered peril. (Page 267.)

Appeal from Craighead Circuit Court, Jonesboro District, *Frank Smith,* Judge; reversed in part.

*T. M. Mehaffy* and *E. B. Kinsworthy,* for appellant.

J. R. Bard was not an expert, and should not have been required or permitted to testify as such. 23 Ark. 215; 24 *Id.* 25; 55 *Id.* 593; 36 *Id.* 117; 66 *Id.* 490. Before he should have been permitted to testify as an expert, it should have been made to appear that the facts upon which he based his opinion could not have been sufficiently described to the jury. 56 Ark. 612. Proof without allegation is as bad as allegation without proof. 2 Ark. 512; 69 *Id.* 363; 41 *Id.* 394. After verdict, the complaint will be treated as amended to conform to the proof only when no objection is or has been made to the introduction of the proof. 70 Ark. 232. Evidence improperly admitted must be treated as prejudicial unless it clearly appears that it was not. 69 Ark. 653.

There can be no recovery of exemplary damages for negligence not attended with malice. 53 Ark. 7. It is the duty of one who is in a position to see to keep the lookout. 62 Ark. 182. No negligence of the company will excuse one going upon a railway company's track from using due precaution. 54 Ark. 434; 69 *Id.* 134; 76 *Id.* 224. When the facts are undisputed, the question of contributory negligence is one of law. 65 Ark. 549; 76 *Id.* 227.

*Lamb & Caraway,* for appellee.

Wilfulness or conscious indifference to consequences from which malice may be inferred is sufficient to justify an instruction

as to punitive damages. 53 Ark. 7; 13 How. 371; 91 U. S. 489. The inference of malice must arise from the act which produces the result. 53 Ark. 7; 84 *Id.* 243; 42 *Id.* 321; 59 *Id.* 215. The action of the court in submitting the question of contributory negligence to the jury was proper. 85 Ark. 326; 79 *Id.* 137; *Id.* 241; 78 *Id.* 355; 76 *Id.* 227; *Id.* 377; 69 *Id.* 489; 68 *Id.* 1; 55 *Id.* 163; 54 Ark. 159; 52 *Id.* 368.

McCULLOCH, C. J.   This is an action instituted by the plaintiff, J. E. Dysart, against the railway company to recover damages for injuries received on account of the alleged negligent acts of the defendant's servants in charge of a train. The plaintiff was employed by the St. Louis & San Francisco Railroad Company as locomotive fireman, and the injury was caused by one of the defendant's engines running into the engine on which the plaintiff was at work at the crossing of the two roads at Nettleton, Ark. At that place the two roads intersect each other at right angles, defendant's line running north and south and the other running about east and west. Plaintiff's engine was drawing a freight train, going west, and came to a stop about two hundred feet from the crossing. The customary signal to go ahead was given, and after one ineffectual effort to start the engine moved forward very slowly, and as it was on the crossing a freight train on defendant's road, coming from the south, ran into it, striking the engine about mid-way and completely turning it over. Plaintiff was thrown from the engine under a platform, several feet from the track, and the engine fell over on the platform, confining the plaintiff for a period of about fifteen minutes, during which time boiling water escaped over his face, limbs and body, burning him severely. His left arm was broken, so that it had to be amputated.

The evidence tended to show that the defendant's train came at a speed of about twenty-five miles an hour, and that no signals for the crossing were given, and no effort was made to slacken the speed. Several witnesses testified that the whistle on defendant's engine was blown for a public crossing some distance below the railroad crossing, but that no signals of any kind were thereafter given, and that there was no perceptible slackening of the speed of the train. Appellant's road south of the crossing is curved,

so that a clear view cannot be obtained down the track, the exact distance not being shown.

The book of standard rules applicable to the operation of railroad trains was introduced in evidence, showing two rules concerning crossings, as follows:

"Rule 98: Train must approach the end of double tracks, junctions, railroad crossings at grade, and drawbridges, prepared to stop, unless the switches and signals are right, and the track is clear. Where required by law, trains must stop."

"Rule 98a: All trains will come to a full stop not less than 200 nor more than 800 feet before crossing another railroad at grade or a drawbridge, will not proceed until the way is known to be absolutely clear, and will sound two long blasts of the whistle before starting."

The evidence shows that the crossing at Nettleton is at grade.

It is not contended that the evidence is insufficient to sustain the finding of negligence on the part of appellant's servants, but certain errors of the trial court during the progress or the trial are alleged.

First, it is contended that the court erred in permitting witness Bard to answer the following question: "Q. State whether or not, as a railroad man, you could tell whether any attempt was being made to stop the Iron Mountain train at or before the collision? A. Positively, no." The witness further stated, in response to another question, that his view was partially obscured until the Iron Mountain train came directly in front of the place where he was standing, but that he saw no indication of an effort to slacken the speed of the train, and that he could only reach a conclusion from the sound of the roaring of the train as it approached. He also stated that he had been in the railroad service a great many years, and was familiar with the operation of trains, and that his ear was practiced to the sound of running trains.

It is not quite clear, from the answer of the witness to the particular question objected to, whether he meant to say positively that there was no slackening of the speed, or whether he meant that he could not determine positively whether there was

any slackening of the speed. We see no prejudice that could result from either view that might be taken of the answer. The witness was an experienced railroad man, and fully qualified to testify on the subject. The plaintiff was therefore entitled to have a statement from him on the subject as to whether or not there was a slackening of the speed, or any effort on the part of the trainmen in charge of defendant's train to stop it. We think it was a proper subject for expert testimony, where the witness was shown to possess special knowledge on the subject, acquired by experience in such work. *Kansas City S. Ry. Co.* v. *Henrie,* 87 Ark. 443.

It is next contended that the court erred in permitting the same witness, Bard, and two other witnesses, Thomas and Tribble, to testify that a few minutes after the accident they saw a man whom they took to be Brashear, the engineer on defendant's train, turn an angle cock on one of the cars of the train. The ground of the objection to this testimony is, first, that the witnesses did not positively identify the engineer as the person who turned the angle cock; and next, that the complaint contained no allegation of negligence in not having the train equipped with air, and that the introduction of the evidence tended to show that the train was not stopped because the angle cock was turned or that the train was not properly equipped with air.

Counsel misconceive, we think, the purpose of the testimony. It was competent for the purpose of showing the condition of the angle cock immediately after the accident, in order for the jury to determine what its condition was when the accident occurred. It tended to show that the speed of the train was not slackened, and that no effort was made to do so. It was necessary, in order for the engineer to apply the air to the brakes throughout his train, that the angle cocks on each car should be turned. The evidence shows that the air had been applied to the first four cars; but proof that the angle cock was not turned on the fifth car established the fact that the air was not applied further back from the engine than this car. This, together with the proof that no signals for the hand brakes were given, tended to establish the fact that no proper effort was made to stop the train or to slacken its speed. It was not to show that there was

negligence in failing to equip the car with air, but to show that the air was not applied.

The next objection is that Murphy, a witness introduced by the defendant, and who was division superintendent on its line of road, was required to answer on cross-examination a question propounded to him concerning the whereabouts of Jacks, the conductor on defendant's train at the time of the accident, Brashears, the engineer, and Hill, the head brakeman. He answered that Jacks had a run on another line of defendant's road, and that he did not know where Brashears or Hill was at the time. When objection was made to this testimony, plaintiff's counsel stated in the presence of the jury that he was asking the question with no view of showing that these employees may or may not have been discharged from defendant's service; and the court instructed the jury not to consider the questions for any such purpose. We can discover no possible prejudice to appellant's case from this testimony. The purpose of introducing it was not disclosed, and the court was not asked and did not give any further instruction concerning it. The undisputed evidence establishes the fact that the train was run up to the crossing in negligent disregard of the rules.

Error is assigned in the refusal of the court to give the following instruction requested by the defendant: "You are instructed that it was the duty of the fireman to use every precaution that a reasonably prudent man could use to avoid the injury; and if you find from the evidence that the plaintiff in this case was, for a short time prior to and up to the time of the injury complained of, shoveling coal into the firebox of his engine as said engine was approaching the crossing of the Iron Mountain and Frisco railways, you are instructed that such action on the part of the plaintiff was negligence." This instruction was properly refused. The lookout statute was not applicable to the facts of this case. It was a question for the jury to determine whether, under all the circumstances of the case, plaintiff was guilty of contributory negligence; and this question was properly submitted to the jury. The evidence shows that at the time of the accident the plaintiff was in the proper discharge of his duties, shoveling coal into his engine; and the evidence tended to show that

ıt was his duty to do so at this particular time. It would therefore have been improper to tell the jury as a matter of law that he was guilty of negligence in doing this, instead of attempting to maintain a lookout. Whether or not it was negligence on his part, under the circumstances, to fail to keep a lookout was a question for the jury to determine; and they have settled that matter by their verdict.

Plaintiff asked for punitive damages, and the court at his request gave the following instruction: "If you find from the evidence that the engineer upon the defendant's train at the time the collision occurred attempted to go over the crossing at Nettleton without stopping his train before reaching said crossing, and without attempting to stop or slacken the speed of the train at any proper or reasonable time or place, and further find from the evidence that trains of the Frisco Railway Company, freight or passenger or both, ran over said crossing with such frequency as to render it reasonable and proper for said engineer to have anticipated the presence of a train upon said Frisco Railway at, and attempting to go over, said crossing, and that the engineer of said defendant, acting either wilfully or wantonly, or with conscious disregard to the rights of the plaintiff, then you may by your verdict award him punitive damages; that is not for the actual damages, if any, sustained by him, but rather as a punishment to the defendant. But, unless you find from a preponderance of the evidence that the conduct of the engineer, under all the facts and circumstances in proof, immediately prior to the collision was wilful, wanton or without conscious regard for the rights of the plaintiff, you can not award punitive damages."

The jury returned a verdict in favor of the plaintiff, assessing the compensatory damages at the sum of $5,000, and punitive damages at the sum of $1,000. It is contended by counsel for defendant that the instruction was erroneous, and also that the evidence was not sufficient to justify a verdict of punitive damages. We are of the opinion that this contention is well founded. There is much contrariety of opinion among the authorities as to what is essential in order to justify an infliction of punitive or exemplary damages. But this court is firmly com-

mitted to the doctrine that negligence alone, however gross, is not sufficient, and that there must be an added element of intentional wrong, or, what is its equivalent, conscious indifference in the face of discovered peril, from which malice may be inferred. *Railway* v. *Hall*, 53 Ark. 7; *Arkansas & La. Ry. Co.* v. *Stroude*, 77 Ark. 109; *St. Louis, I. M. & S. Ry. Co.* v. *Stamps*, 84 Ark. 241.

The opinion of this court in *St. Louis, I. M. & S. Ry. Co.* v. *Stamps, supra*, leaves no escape from this conclusion. In that case, Kirby, a watchman on a draw-bridge, was struck and killed by defendant's train, and the evidence tended to show that, after the drawbridge had been opened for a boat, a freight train whistled, and that he went to the end of the bridge and attempted to signal the train. The evidence was conflicting as to whether the engineer saw Kirby on the track in time to have taken steps. to avoid the injury. The question of punitive damages was submitted to the jury; and this court allowed a recovery therefor to stand, on the distinct ground that the engineer was not only negligent, but that the jury were justified in finding that he saw Kirby's perilous position in time to have prevented the injury, and wilfully, or with conscious indifference to consequences, refrained from doing anything to avert the disaster. The judges in their opinions divided on the question of fact as to whether or not there was any evidence to justify a finding of wilfulness or conscious indifference to results on the part of the engineer after he had discovered the peril. Justices Wood and Riddick dissented, and the latter, with his accustomed vigor, stated the law so plainly that it can not well be misunderstood. His statements of the law were adopted by the court as correct, as is shown by the opinion of the Chief Justice on rehearing, where this was said: "The writer of that opinion (referring to Judge Riddick's dissenting opinion) and the judge who agreed with him in it were convinced that Kirby was not standing in plain view, waiving his flag at the end of the draw, when the train came in sight. If the majority could see the facts that way, there would be no escaping the conclusion stated in the opinion of Mr. Justice Riddick."

The same doctrine has been announced by the Supreme

Court of the United States in at least two opinions which have been expressly approved by this court. In *Philadelphia, W. & B. Rd. Co.* v. *Quigley,* 21 How. 202, Mr. Justice Campbell, speaking for the court, said : "Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the wrong complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations."

In *Milwaukee & St. L. Ry. Co.* v. *Arms,* 91 U. S. 489, the court, after quoting the above statement from *P. W. & B. Ry. Co.* v. *Quigley,* said : "Although this rule was announced in an action for libel, it is equally applicable to suits for personal injuries received through the negligence of others. Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages."

The terms "wilfulness, or conscious indifference to consequences from which malice may be inferred," as used in the decisions of this court, means such conduct in the face of discovered peril. In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice will be inferred.

The instruction given in this case was in conflict with the views here expressed; and the evidence was insufficient to jus-

tify the infliction of anything more than compensatory damages. There is no evidence at all that the man in charge of defendant's train knew, in time to avert the injury, that the Frisco engine was about to make the crossing. The Frisco engine had just started on the crossing; and, as defendant's train was going at full speed, it is not probable that the train could have been stopped after it came in view of the other engine on the crossing. The negligence consisted in failing to observe the rules laid down for the operation of trains at crossings. If these rules had been observed on the part of defendant's servants, no injury would have occurred; and the defendant is liable because of the negligence of its servants in the non-observance of those rules. But this was gross negligence, and nothing more. There is nothing to show that the trainmen were aware of the perilous situation, o. that there was any wilfullness on their part or conscious indifference to the consequences of their negligent act. The judgment for punitive damages can not therefore be sustained.

The judgment for compensatory damages in the sum of $5,-000 is affirmed, but the judgment for punitive damages is reversed and dismissed.

BATTLE and HART, JJ., dissent on the ground that the whole judgment should be affirmed.