## THOMAS COX & SONS MACHINERY COMPANY *v.* FORSHEE.

### Opinion delivered October 17, 1910.

1. APPEAL AND ERROR—WAIVER OF OBJECTION.—An objection on account of the introduction of testimony will not be considered on appeal if no exception was saved to its introduction. (Page 162.)

2. SAME—HARMLESS ERROR.—A reversal will not be granted for errors which are not prejudicial to the rights of the complaining party. (Page 162.)

3. TENDER—WHEN NECESSARY.—No tender of performance of a contract is necessary where the contract has been definitely repudiated by the other party, as by a refusal to accept delivery if tendered. (Page 162.)

Appeal from Pike Circuit Court; *James S. Steel,* Judge; reversed.

#### STATEMENT BY THE COURT.

This is an action brought by Thos. Cox & Sons Machinery Company, a domestic corporation, against J. R. Forshee, J. W. Brock, D. Geiser and J. C. Bullard to recover the sum of

$699.68 and the accrued interest, alleged to be due upon a promissory note.

The defendants answered and admitted the execution of the note sued on, but averred that it was executed upon certain conditions, which will be set forth in the statement of facts, and which they say were never performed; and that, for this reason, the note never became a binding obligation. The defendants also interposed a counterclaim which, for the reasons hereinafter given, it is not necessary to abstract.

The plaintiff introduced the note sued on, and rested. The defendants then adduced evidence in effect as follows: The Forshee Lumber Company was a domestic corporation, and in May, 1907, purshased from the Thos. Cox & Sons Machinery Company, the plaintiff herein, which is also a domestic corporation, certain saw mill machinery, which was delivered to it; and for the payment of which it executed certain promissory notes, in which it was agreed that the title to the machinery should remain in the vendor until it was paid for. At the time of the purchase the defendant, J. R. Forshee, was president and general manager, and conducted the negotiations on behalf of his company. In August, 1907, the defendant J. W. Brock succeeded him. In September, 1907, S. T. Poe, an attorney and agent, came to see him in regard to the payment of the first note, which was due and unpaid. There was a meeting of some of the stockholders, to discuss the advisability of calling a stockholders' meeting to make an assessment to pay this note, theire being no funds on hand with which to meet it. All the defendants, who were stockholders of the Forshee Lumber Company, and S. T. Poe, the agent and attorney of the plaintiff company, were present at the meeting. Poe was making pressing demands for the payment of the first note which was overdue. Thus far there is no dispute in the testimony.

J. W. Brock testified in substance as follows: The Forshee Lumber Company was a corporation. I was a stockholder in the Forshee Lumber Company until the meeting the 1st of August, 1907, when I was elected general manager of the company. J. R. Forshee had been manager prior to that time. I was engaged in the lumber business. The company was incorporated in April or May, 1907. I had nothing to do with the buying of the ma-

chinery from the plaintiff.   I had a conversation with Sam T.
Poe in September, 1907, in reference to the installments which
he claimed to be due the Cox Machinery Company.   At that
time I was general manager of the lumber company.   The partic-
ular thorn in the flesh was $500 due on this machinery, and $200
due for supplies.   I met Mr. Poe at Antoine, and he came on to
Delight with me.   I did not have the money to make these pay-
ments then.   I had written the stockholders to meet me at De-
light that day in an informal meeting to decide whether we would
make the assessment and pay in some on the stock, in order to
pay these accounts and carry on the business.   I told Poe about
this arrangement, and when we got to Delight there were quite
a large number of the stockholders there, so the stockholders
and I agreed there that day that we would make the assessment.
We decided that we would have to notify the absent stockholders
before we could make the assessment, and agreed to call a regular
meeting of the stockholders.   Mr. Poe was there in the store and
waited on the stockholders' meeting for the payment of the first
installment on the machinery.   He wanted me and some others
to give personal notes for the amount, but I told him we could
not become personally liable for the debts of the Forshee Lumber
Company.   Then Poe said he could not carry this payment any
further.   We discussed the matter at some length, and some of
the stockholders were present at the time.   And I finally made
him a proposition that if these parties would sign a note with
me to stand this thing off until we could call a regular meeting
of the stockholders, and if he would take possession of this ma-
chinery and turn it over to me if the stockholders failed to assess
and pay the amount, I would pay the amount, if he turned
the machinery over to me, and that I would take up the contract
and pay the price agreed to be paid by the Forshee Lumber Com-
pany, and Mr. Poe agreed to do that under the condition that
this note would be security if Mr. Poe took possession of the
machinery and delivered it to me, and not before.   The other
parties that signed the note were present when this agreement
was reached.   This note was to be void if the company took up
the installment; but if the company did not pay this amount, we
would not be liable on this note until Mr. Poe took the machinery
from the Forshee Lumber Company and turned it over to me.

The machinery was never turned over to me. It was sold at a receiver's sale.

The other defendants testified substantially the same as J. W. Brock.

In rebuttal, the plaintiff introduced S. T. Poe, who testified substantially as follows: After I had discussed with Mr. Brock and the other directors of the Forshee Lumber Company who were present the matter of their making this payment, the following agreement was reached: That this note would be executed for the cash payment on the machinery, which represented $500 and the $199.68 for supplies that were sent them and were supposed to have been sold for cash. Mr. Brock says that machinery was worth enough to pay that debt; and if they would take hold and take up that amount for the Forshee Lumber Company, why the Forshee Lumber Company can pay it when they make the assessment. I stated in response to that: "That is true. Why don't you take up the proposition yourself," and he said: "Well, the Forshee Lumber Company is not ready to give it up now if they can pay it, and we do not want to give it up at all," and I said: "Well, if you will fix a way for us to get our money, that is what I am looking for." I said: "My information is that four of the stockholders of the concern are worth the money; and if you folks will give me a note for the cash payment, including this account, and let the Forshee Lumber Company execute these notes for the balance, retaining title in the machinery, I will give you enough time to get the stockholders together, and make the assessment, and get enough money to pay this off, if you want to do that way." Well, Mr. Brock said he did not want to do that; that he did not want to make the cash payment and then lose the machinery. I said: "There is no danger of your losing the machinery if you pay for it." * * * * Mr. Brock said all right, that they would make the note; and if the Forshee Lumber Company failed to make the payment, he would take up the note and take up the balance of the notes and take the machinery, and we discussed the matter then, in which we spoke of the delivery of the machinery, and I said: "Now, we have got title in that machinery until it is paid for by the Forshee Lumber Company." And he says: "Yes." "Now," I says, "you can turn it over to me, and I can turn it back to you; but when

you take these notes retaining title in the machinery you have title enough that anybody can't get away from you." And so the matter was closed up that way. The note was made, and they signed it, and I went away. Well, I took the note, and went home, and some time later, after the note was due and not paid, I came back to Delight to get the matter straightened up, and went to Mr. Brock, and told him that it was nearly time this note was due, or that it was going to mature, and if he wanted the machinery to go up there and take charge of it and pay this note off. "Now," I says, "if you want this machinery, all you have to do is to go take charge of it." And he said: "I do not want it; I have been up there with that machinery all the time, and I have lost one of my girls and the the balance of my family are sick all the time." And he said: "I had rather lose the balance of the machinery than to have anything more to do with it." And when he said that I said: "I did not blame him if he could not have health up there," but I said: "I am ready to let you have the machinery if you want it." And there was nothing done then, and never has been anything done, in regard to the matter until the second sale by the receiver. Mr. Brock could have got it, even when the receiver had it in charge, if he had said he wanted it; but he said he did not want it, and I did not want to waste any further time in trying to make a man take something that he did not want. The machinery sold at receiver's sale, and was bought by the Thos. Cox & Sons Machinery Company for $2,000, and later sold by them for $1,700.

The trial was before a jury, which returned the following verdict: "We, the jury, find for the defendants without damage."

Judgment was thereupon rendered in favor of the defendants, and the plaintiff has duly prosecuted an appeal to this court.

*Sam T. Poe* and *George A. McConnell,* for appellant.

1. Appellees are in no position to claim damages to their credit and business standing because of being sued on a promissory note, a *prima facie* liability. 99 S. W. 580; 41 N. J. Eq. 152; 2 Atl. 286; 1 Cyc. 649; 8 Am. & Eng. Enc. of L. 549; 34 Ark. 707. Even in case of a malicious prosecution, the defendant could not set up damages as a counterclaim. Kirby's Digest, § 6098; 65 Ark. 278; 89 Ark. 368; 32 Ark. 281; 40 Ark. 75; 48 Ark. 396; 83 Ark. 283; 31 Ark. 359. The cross complaint

does not set up a proper counterclaim or set off.  Kirby's Dig. § 6099; 87 Ark. 166; 84 Ark. 218; 92 Ark. 594.  And the demurrer should have been sustained.  On the trial the court erred in allowing appellees to testify as to their business and credit being damaged, and in refusing to instruct the jury that they were not entitled to recover damages.

The damages alleged were too remote and speculative to permit of recovery.  29 Ark. 458; 30 Ark. 55; 8 Am. & Eng. Enc. of L. 548; 55 Ark. 401; *Id.* 376; 57 Ark. 257; 57 Ark. 203; 34 Ark. 184.

2.  The disputed question as to whether or not the appellant offered to deliver the machinery to Brock should have been submitted to the jury.  The court therefore erred in refusing the fourth instruction requested by appellant, and in giving the first requested by appellees.  76 Ark. 88; 76 Ark. 538; 24 Am. & Eng. Enc. of L. (2 ed.) 1069.  After Brock's statement that he did not want the machinery, a formal tender was unnecessary.  35 Cyc. 167, 169, 171.

*J. S. Lake,* for appellee.

1.  Appellant having failed to save exceptions to the testimony introduced in support of the cross complaint, its objections will not be considered here.  Kirby's Dig. § 6222; 91 Ark. 43.  This court will not reverse for harmless error.  The jury disregarded the claims of appellees for damages. 89 Ark. 261; 88 Ark. 7; 91 Ark. 310; 85 Ark. 452; 83 Ark. 1.

2.  Instruction 4, requested by appellant, was properly refused.  It is ambiguous, assumes the existence of facts and is not warranted by the evidence. 92 Ark. 6; *Id.* 71; 92 Ark. 392.  Instruction No. 1, requested by appellee, is right. 76 Ark. 140; 57 Ark. 64; 128 U. S. 590.

3.  Appellant was not in possession of the machinery until after Poe's conversation with Brock.  There is no sufficient tender if the party making the offer is not in actual possession of the article and ready to make immediate delivery. 2 Parson on Contracts (5 ed.) 648; 39 Ark. 280; 39 Ark. 340.

Delivery of the machinery to Brock was a condition precedent to defendant's liability. 15 Ark. 64; 3 Am. & Eng. Enc. of L. (1 ed.) 911 and notes; 76 Ark. 140; 79 Ark. 140; 57 Ark. 64; 128 U. S. 590.

HART, J. (after stating the facts.)    The errors complained of by counsel for appellant, both on account of the introduction of testimony and in the instructions given, as to the measure of damages sustained by appellees by reason of their alleged counterclaim, will not be considered by the court. As insisted by counsel for appellee, no exceptions were saved to the testimony of appellees upon this point. *American Insurance Co.* v. *Haynie,* 91 Ark. 43.

Besides the errors complained of, both in regard to the introduction of evidence and the instructions of the court upon this point, are eliminated by the verdict of the jury.    The jury disregarded the claims of appellees for damages, and found against their contention in that behalf.    Hence the errors complained of were harmless, and it is the settled rule of this court that a reversal will not be granted for errors which are not prejudicial to the rights of the complaining party. *Harris* v. *Remmel,* 83 Ark. 1; *Powell* v. *Fowler,* 85 Ark. 452; *Capital Fire Ins. Co.* v. *Kaufman,* 91 Ark. 310; *Western Coal & Mining Co.* v. *Buchanan,* 88 Ark. 7; *St. Louis, I. M. & S. Ry. C.* v. *Dysart,* 89 Ark. 261.

We do, however, agree with the contention of counsel for appellant that the court erred in giving the jury instruction No. 1 at the request of appellees and over the objection of appellant.    In that instruction the court ignored the contention of appellant that the appellees refused to accept the machinery, and thus absolved the appellant from any further duty to tender or deliver the machinery.    The testimony of S. T. Poe in behalf of appellant on this point has been fully set out in the statement of facts, and, without repeating it here, it is sufficient to say that the language and conduct of Brock, as testified to by Poe, in effect was an absolute refusal to accept the machinery, and appellant was justified in relying upon Brock's action as equivalent to a waiver of tender.    While the testimony of Poe on this point is squarely denied by Brock, who says that no offer or tender was made until after the machinery was placed in the hands of the receiver, yet the contention of appellant in that regard should have been submitted to the jury.

No tender is necessary when the contract has been definitely repudiated by the buyer, as by a refusal to accept delivery if

tendered. 35 Cyc. 171 and cases cited in note 43; *Kirchman* v. *Tuffli Brothers Pig Iron & Coke Co.,* 92 Ark. 111.

Counsel for appellant also assigns as error the refusal of the court to give an instruction asked by them on this point. We do not think the court erred in refusing the instruction in the form in which it was asked; for it was open to the objection that it assumed that the appellees had refused to accept the machinery.

For the error in giving instruction No. 1 at the request of appellees the judgment is reversed, and the cause remanded for a new trial.