Arnal Wayne GRIFFIN *v.* GEORGE'S, INC.

79-195                                           589 S.W. 2d 24

Opinion delivered November 13, 1979
(In Banc)

*Wommack & Hawkins,* by: *Claude S. Hawkins, Jr.,* for appellant.

*Crouch, Blair, Cypert & Waters,* for appellee.

JOHN A. FOGLEMAN, Justice. The trial judge sustained the general demurrer of George's, Inc., to the complaint of Arnal Wayne Griffin, seeking to recover for personal injuries suffered during the course of his employment by George's, Inc. Originally, there was no indication that this ruling was a final judgment, as Griffin was given 30 days to plead further. See *Griffin* v. *George's, Inc.,* 266 Ark. 646, 587 S.W. 2d 225 (1979). We did not dismiss the appeal, in order that the parties might have an opportunity to establish the finality of the trial court's action. We now have a record reflecting the dismissal of Griffin's complaint, which is, of course, a final order.

Since the dismissal was based upon the sustaining of appellee's demurrer, we must consider as true all facts well pleaded in the complaint and draw all reasonable inferences from those facts in favor of the pleader. *Howell* v. *Arkansas Power & Light Co.,* 225 Ark. 535, 283 S.W. 2d 680; *Tri-B Advertising, Inc.* v. *Arkansas State Highway Com'n.,* 260 Ark. 227, 539 S.W. 2d 430. So we will review the facts alleged in the complaint as if they were facts established as true.

George's, Inc., is engaged in the feed and grain indus-

try. Griffin was an employee of George's at Springdale. On or about July 10, 1974, Griffin, then 17 years of age, was severely, painfully, seriously and permanently injured when, in the performance of his duties, he stepped on loose grain and other foreign objects on the surface surrounding an unguarded grain auger and slipped into and become entrapped in it. This auger constituted an extreme hazard to persons working near it, as appellant was at the time of his injury, for the following reasons: There was no grate, or any other protective guard, to prevent persons coming near the auger from falling into, or becoming trapped in, the auger; a protective grate which had been on the auger when it was installed was removed by Griffin's employer in order to install a "clod-buster" and had never been replaced; the auger was two to three feet below ground level, and the opening into it was funnel shaped, i.e., it was larger at ground level than it was at the level of the auger; the surface at ground level sloped toward the opening of the auger, and, since there was usually grain lying upon this surface, one coming near the opening could easily slip and fall into the unguarded grain auger. This condition was permitted to exist in spite of the fact that it was in direct violation of federal and state statutes and regulations, and could have easily been corrected by installation of a protective covering over the opening. Although the employer was aware that this condition was hazardous and dangerous to its employees and recognized the substantial certainty that it would result in injury to an employee, it wilfully and wantonly disregarded this known danger and gave Griffin a dangerous work assignment which placed him in direct danger of injury by the auger. The employer ordered him to perform this duty without giving him any instructions in the proper and safe manner of performance of his duties or any warnings regarding this dangerous and hazardous condition, in spite of the fact that it was substantially certain that an employee in Griffin's position would be injured by reason thereof. The auger contained a shaft with a blade connected thereto which was revolving on the shaft when Griffin slipped into it and his resulting injuries were compounded by delay in stopping the operation of the grain auger due to the fact that no safety "shut-off" devices had been installed on the auger. Griffin was required to start work at 5:00 a.m. on the day he was injured, in

violation of Ark. Stat. Ann. § 81-707 (Repl. 1976) [Child Labor Act]. He was also involved in the operation of power driven hoisting apparatus in direct and intentional violation of federal regulations. Plaintiff's injuries would not have occurred had this federal regulation not been violated.

The demurrer and the circuit court's order sustaining it were based upon Ark. Stat. Ann. § 81-1304 (Repl. 1976) which makes the rights and remedies of an employee under the Worker's Compensation Law exclusive of all other rights and remedies of the employee for injury or death arising out of and in the course of his employment.

Appellant contends that the trial court erred in sustaining the demurrer because his injury resulted from an intentional tort committed by George's. He recognizes that, in *Haggar* v. *Wortz Biscuit Co.*, 210 Ark. 318, 196 S.W. 2d 1, we held that recovery from the employer for the death of an employee in a wrongful death action based on allegations of gross negligence and unlawful acts of the employer was barred because remedies provided by the Worker's Compensation Law were exclusive. This holding was subsequently construed to mean that recovery for injury or death resulting from gross negligence of the employer was limited to the remedy provided by the Worker's Compensation Law under § 81-1304, but the section was not to apply to a wilful and malicious injury by an assault by the employer on the employee. See *Heskett* v. *Fisher Laundry & Cleaners, Inc.*, 217 Ark. 350, 230 S.W. 2d 28.

Griffin contends that, since his complaint alleges an intentional tort, he not precluded from proceeding with his common law tort action against his employers. He draws an analogy between the test regarding exclusivity of remedies under the Worker's Compensation Law and the test for allowance of punitive damages in negligence cases. He points out that punitive damages are not recoverable in cases where liability is based upon negligence, however gross the negligence may be, unless there is either an added element of intentional wrong, or its equivalent, conscious indifference in the face of discovered peril, from which malice may be inferred, citing *St. Louis S.W. Ry. Co.* v. *Owings*, 135 Ark.

56, 204 S.W. 1146; *St. Louis I.M. & S. Ry. Co.* v. *Dysart,* 89 Ark. 261, 116 S.W. 224; *Moore* v. *Wilson,* 180 Ark. 41, 20 S.W. 2d 310. Griffin argues that the outer limits of the exclusivity ban should coincide with the limit on the right to seek punitive damages in negligence cases.

Appellant also points out that in *Ellis* v. *Ferguson,* 238 Ark. 776, 385 S.W. 2d 154, we held that the law imputes a constructive intention as to the consequences to an offender and, in some cases, conduct which would otherwise be mere negligence becomes a wilful wrong when there was a reckless disregard of probable consequences by the actor. He also relies upon definitions of intent which extend to consequences which the actor believes are substantially certain to follow from what he does. See Prosser, Torts (4th Ed.), p. 31, § 8; Restatement of the Law, Torts, 2d, p. 15, § 8A. He also cites *Garratt* v. *Dailey,* 46 Wash. 2d 197, 279 P. 2d 1091 (1955), wherein the Washington Supreme Court held that a defendant who moved a chair while plaintiff was in the process of sitting down in the chair, would be liable for the intentional tort of battery, if he acted with knowledge that such result was substantially certain to occur. This case dealt with common law tort liability only.

We think that appellant is asking us to extend our decisions in *Hagger* and *Heskett,* to write an exception into § 81-1304 for injuries or death resulting from wilful and wanton negligence.[1] In *Heskett,* we considered the question whether a wilful and malicious injury inflicted by an officer and general manager of the employer upon the employee is comprehended within the provisions of the Worker's Compensation Act. We held that the vicious, intentional, unprovoked, and *premeditated* assault by the employer upon the employee was not an accident so as to come within the provisions of the Worker's Compensation Act. It naturally followed that the "exclusive remedy" section did not apply in such a case. Actually, it had been alleged in the complaint

[1] Our definitions of wilful and wanton negligence include the element of constructive intent, upon which appellant relies. See *Edwards* v. *Jeffers,* 204 Ark. 400, 162 S.W. 2d 472; *Cooper* v. *Calico,* 214 Ark. 853, 218 S.W. 2d 723; *Scott* v. *Shairrick,* 225 Ark. 59, 279 S.W. 2d 39; *Spence* v. *Vaught,* 236 Ark. 509, 367 S.W. 2d 238; *Carden* v. *Evans,* 243 Ark. 233, 419 S.W. 2d 295.

in *Hagger* that the acts relied upon to avoid the application of that section were gross, wanton and unlawful. There was no departure from *Hagger* v. *Heskett;* instead, we adhered to *Hagger,* and did not relax the strict limitation of § 81-1304. It is also important to remember that our decision in *Heskett* that the employee could seek full damages in a common law action was based upon the premise that an employer wilfully severs the employer-employee relationship by committing a wilful assault upon the employee.

The appropriate construction of § 81-1304 is indicated in Larson's Workmen's Compensation Law, Vol. 2A, p. 13-8, § 68.13, where the writer said:

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injury that robs the injury of accidental character.

*Heskett* is not inconsistent with this approach. It only excepts acts committed with an actual, specific and deliberate intent on the part of the employer to injure the employee. We relied upon authority that an employer who *deliberately* batters his employee should not be allowed to compel the worker to accept moderate workmen's compensation benefits.

We think the proper result was reached in *Finch* v. *Swingley,* 42 A. D. 2d 1035, 348 N. Y. S. 2d 266 (1973). The effect of that decision is that, in order to avoid the bar of the exclusivity clause on demurrer, the complaint must be based upon allegations of an intentional or deliberate act by the employer with a desire to bring about the consequences of the act, and not upon allegations of wilful and wanton conduct by negligent direction to the employee to use a device known by the employer to be defective or failure to warn the employee of an unsafe condition of which the employer was aware.

In considering § 81-1304, we must keep in mind that if employers are required not only to provide worker's compensation but also to defend tort actions of employees and to respond in damages for torts, there would be a subversion of the very purpose of the whole workmen's compensation scheme of spreading the risk of loss for injuries arising out of, and in the course of, covered employment so that, indirectly and ultimately, the general public bears the burden as a part of the cost of articles produced or services rendered, because there would be no way to spread the risk of the tort liability. See, *Rosales* v. *Verson Allsteel Press Co.*, 41 Ill. App. 3d 787, 354 N.E. 2d 553 (1976).

The trial court properly sustained the demurrer of George's, Inc. to Griffin's complaint, so the judgment is affirmed.