**Stuart K. VANN, et al., Plaintiffs,**

v.

**The DOW CHEMICAL COMPANY, Defendants.**

**Civ. No. 82–1129.**

United States District Court, W.D. Arkansas, El Dorado Division.

March 21, 1983.

---

John W. Unger, Jr., El Dorado, Ark., for plaintiffs.

Frederick R. Ursery, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

On October 14, 1982, plaintiffs instituted this action against defendant, The Dow Chemical Company (hereinafter "Dow"), pursuant to 28 U.S.C. § 1332, alleging that plaintiffs, Stuart Vann, William Joe Wallace, Jr., Billy Hendricks, Thomas Pyle and William Joe Wallace, Sr., while employees and employees of independent contractors of Dow, were allowed to come into contact with Dibromochloropropane, Ethylene Dibromide and Bromine (hereinafter "DBCP") without warning and without proper safety apparatus. Plaintiffs allege that they now suffer from sterility, carcinogenicity and mutagenicity as a result of that exposure.

Dow responded, raising the issues of comparative fault and exclusivity of remedy under the Arkansas Workers' Compensation Act.

In January, 1983, Dow moved to dismiss plaintiffs' claims with respect to Thomas Pyle and William Wallace, Sr., its employees, pursuant to Rules 12(b)(1) and 12(h)(3). Plaintiffs have timely responded and the issues are now ripe for review.

### Discussion

At the outset the Court notes that defendant, Dow, filed its Answer on November 10, 1982, and its motion to dismiss on January 4, 1983. It is fundamental that a motion to dismiss is not a proper procedural device after the pleadings are closed. However, the Court will treat the motion as one for judgment on the pleadings since the subject matter jurisdiction of this Court is involved.

The salient portions of plaintiffs' Complaint include the following allegations:

6.

... the plaintiffs due to the negligence and carelessness of the defendant, were caused to come into contact with DBCP....

\*　　\*　　\*　　\*　　\*　　\*

8.

That said injuries and damages to the plaintiffs were directly and proximately caused by the gross negligence and carelessness of Dow, in that Dow knew, or in the exercise of reasonable care should have known, that DBCP contained deleterious substances ...

(a) Negligently failed to take any reasonable precautions . . . .

(b) Failed and omitted to provide plaintiffs with the knowledge of what would be reasonably safe and sufficient wearing apparel . . .

(c) Negligently and carelessly manufactured and handled DBCP . . .

(d) Negligently failed to take any reasonable precautions or exercise reasonable care . . .

(e) Negligently provide(d) . . . an unsafe environment . . .

(f) Negligently failed to take reasonable precautions . . . to warn plaintiffs . . . .

\*   \*   \*   \*   \*   \*

14.

. . . due to . . . the negligence and carelessness of Dow, the plaintiffs sustained severe permanent and disabling injuries . . . .

\*   \*   \*   \*   \*   \*

16.

. . . Dow, knew that the DBCP . . . was highly toxic and dangerous . . . . Dow . . . willfully exposed these plaintiffs to DBCP . . . . Dow . . . impliedly represented that (DBCP) could be handled safely.

\*   \*   \*   \*   \*   \*

17.

. . . Dow acted deliberately and with full knowledge of the health hazards . . . for business reasons, with a conscious and willful disregard . . . and was guilty of oppression, fraud, malice, and willful infliction of injury . . . .

Dow argues that *Phifer v. Union Carbide Corp.,* 492 F.Supp. 483 (E.D.Ark.1980), precludes plaintiffs' maintenance of the instant suit, because Ark.Stat.Ann. § 81–1304 subjects all such injuries to the exclusive remedies provided by the Workers' Compensation Act.

In the *Union Carbide,* case, *supra,* Judge Arnold granted the motion to dismiss of the employer, Union Carbide, because of the exclusive remedy provision of the Arkansas Workers' Compensation Act. The plaintiff had worked for Union Carbide as a plant chemist. He brought the action against his employer alleging that he had sustained injuries as a result of intentional and negligent acts. The allegations of the complaint, as set forth in the court's opinion, were similar to the allegations in the instant case. The allegations were as follows:

(a) Failure to take the necessary steps to prevent Plaintiff's exposure to damaging levels of the dangerous gases and substances including, but not limited to, the failure to properly coordinate the rate of ventilation with the production of poisonous gases and substances;

(b) Failure to warn Plaintiff of the full neurotoxic nature of carbon disulfide, including its potential for causing nerve and brain damage;

(c) Failure to warn Plaintiff of the full toxic nature of hydrogen sulfide and sulferic acid;

(d) Failure to provide Plaintiff with any personal protective gear whatsoever, including, but not limited to, raincoats and respirators;

(e) Failure to warn Plaintiff that the toxic chemicals could be picked up by his work clothes, retained, and thereby continue to cause damage to him off the job; and

(f) Failure to include adequate and necessary ventilation systems in the design of the Union Carbide plant in Osceola, Arkansas.

\*   \*   \*   \*   \*   \*

Defendants Union Carbide and its officers are also liable to Plaintiff for punitive damages because of their intentional acts toward him as evidenced by the following facts: (a) that Union Carbide only provided some of its own employees with raincoats and/or respirators, but neglected to do so for Plaintiff; (b) as further evidence by Union Carbide's unique knowledge of the neurotoxicity of $CS_2$ through its operation since 1971 of the Toxicological Information Response Center at Oak Ridge, Tennessee, and its pub-

lication there of Toxicity and Analysis of Carbon Disulfide, an annotated bibliography of 369 references on the analytical methods, toxic effects on humans and animals, and other environmental effects of carbon disulfide.

After reviewing the above quoted allegations of the complaint, Judge Arnold concluded:

In considering this motion to dismiss the Court must take as true all well-pleaded facts. Assuming, *arguendo,* that Mr. Phifer could prove all of the allegations quoted above, he still would . not have proved that defendants committed intentional torts of the kind required under Arkansas law to give him a common-law action in tort against Union Carbide and the individual employee defendants.

Judge Arnold stated that "the Supreme Court of Arkansas has recently addressed this issue, *en banc,* in an opinion which this court finds to be controlling." The case referred to was *Griffin v. George's, Inc.,* 267 Ark. 91, 589 S.W.2d 24 (1979).

Relying upon *Griffin,* Judge Arnold held that "only if an employer commits acts with an actual, specific, and deliberate intent to injure the employee will the employee have a common-law action in tort."

In *Griffin v. George's, Inc., supra,* a 17-year-old employee filed a complaint against his employer for injuries sustained during the course of his employment. The Court characterized the instrumentality of injury as "an extreme hazard to persons working near it." *Id.* at 93, 589 S.W.2d 24. The employer was aware of the dangerous condition and willfully and wantonly disregarded the danger. Several state and federal safety regulations had been violated by the employer.

The Arkansas Supreme Court held that plaintiff's proof was insufficient to establish a common-law cause of action, because such an action requires an actual, specific, and deliberate intent to injure.

In *Phifer,* Judge Arnold concluded that "each and every one of the allegations, if proved, would still fall short of the actual, direct, and deliberate intent required. . . . "

In *Heskett v. Fisher Laundry & Cleaners Co., Inc.,* 217 Ark. 350, 230 S.W.2d 28 (1950), the Arkansas Supreme Court declared, "The Workmen's Compensation Law deals not with intentional wrongs but only with accidental injuries." *Id.* at 354, 230 S.W.2d 28. The Court further said, ". . . the intention of the lawmakers was not to destroy such employee's right to full damage when the injury results from the willful and intentional act of the employer." *Id.* at 356, 230 S.W.2d 28.

In *Heskett,* the Court concluded that an employee was not relegated to the Worker's Compensation laws to redress injuries received in an assault by the employer, and could maintain an action at law.

In *Braman and the Gus Blass Co. v. Walthall,* 215 Ark. 582, 225 S.W.2d 342 (1949), the Arkansas Supreme Court allowed an employee to sue his employer at law for slander arising from the working environment. In *Walthall,* appellants argued that because the matters complained of arose out of and in the course of the employment, the employee's claim was solely cognizable in the Workers' Compensation Commission. Of this contention, the Court said, "Appellants cite no authority to sustain this novel contention and we find it to be without merit." *Id.* at 585, 225 S.W.2d 342.

Plaintiffs, in essence, argue that sterility, carcinogenicity, and mutagenicity are not compensable injuries within the Workers' Compensation Act, and, therefore, plaintiffs should be allowed to bring an action at law.

It is true that neither sterility, carcinogenicity, nor mutagenicity are scheduled injuries, unless one were to construe them as constituting partial loss of use of testicles under Ark.Stat.Ann. § 81–1313(c)(17), (21), (22). Nor are they disabling conditions in themselves. Nonetheless, this does not mean that plaintiffs have no remedies under the Workers' Compensation Act.

Claims based on psychological employment disabilities are compensable under the Act. *Bibler Bros., Inc. v. Ingram,* 266 Ark. 969, 587 S.W.2d 841 (Ark.App.1979). It is

clear that the allegations of the complaint, if taken as true, would bring plaintiffs within the scope of the Act, and that under the Act, plaintiffs would be entitled to be considered for some form of relief.

In *Moss v. Southern Excavation, Inc.,* 271 Ark. 781, 611 S.W.2d 178 (1981), an employee filed a common-law tort suit against his employer seeking damages for the loss of the senses of taste and smell, the loss having occurred within the scope of employment. The Court held that as the loss of the senses of taste and smell is neither a scheduled injury as set out in Ark.Stat.Ann. § 81–1313(c), nor one which diminished the employee's earning capacity, the employee's sole remedies were medical expenses and temporary disability benefits under the Workers' Compensation Act.

█ Based upon the allegations in the instant action, it is possible that plaintiffs would be entitled to medical expenses under Ark.Stat.Ann. § 81–1311. Any work-related physical or psychological earning disabilities would possibly be compensable, whether temporary or permanent. The inadequacy of the award or complete lack of an award, under the Workers' Compensation Act, cannot furnish the basis of a common-law cause of action. So long as the accidental injury, occupational disease or infection arises out of and in the course of the employment, the Workers' Compensation Act affords the exclusive remedy. Ark.Stat. Ann. § 81–1304. This is so unless the employer injures the employee with an actual, specific, and deliberate intent to do so. *Phifer, supra.*

Accordingly, the claims of plaintiffs, Thomas Pyle, Dyanne Pyle, William Wallace, Sr., and Diane Wallace, so far as they relate to negligent, careless, reckless, willful or wanton conduct, will be dismissed, as the allegations of these claims are insufficient to state a common-law cause of action. Claims of this nature arising out of and in the course of employment are subject to the exclusive jurisdiction of the Workers' Compensation Commission and thus, this Court has no jurisdiction over these matters.

As the Arkansas Supreme Court said in *Griffin:*

We think that appellant is asking us to extend our decisions in Hagger and Heskett, to write an exception in § 81–1304 for injuries or death resulting from wilful and wanton negligence.

*Griffin,* 267 Ark. at 95, 589 S.W.2d 24.

In its note to this comment the Court declared:

Our definitions of wilful and wanton negligence include the element of constructive intent, upon which appellant relies. (Citations omitted.)

*Id.,* n. 1.

In *Larson's Workmen's Compensation Law,* Vol. 2A, p. 13–8, § 68.13, quoted by the Arkansas Supreme Court with approval in *Griffin,* Professor Larson said:

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injury that robs the injury of accidental character.

*Griffin,* at 96, 589 S.W.2d 24.

Construing the allegations of the complaint most broadly in favor of plaintiffs, it is clear that plaintiffs' claim falls squarely within the rule enunciated in *Griffin* and *Phifer,* rather than the exceptions declared in *Heskett* and *Walthall.* The complaint demonstrates on its face an "insuperable bar to relief." *Robinson v. MFA Mutual Insur. Co.,* 629 F.2d 497 (8th Cir.1980).

Accordingly, the motion of defendant to dismiss will be granted by order entered concurrently herewith.